UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-3-16
```

------------------------------------------------------------X
                                   :

DRAGON STATE INTERNATIONAL     :
LIMITED,                                 :

               *Plaintiff,*        :

                                   :

       *-against-*           :

KEYUAN PETROCHEMICALS, INC.,    :
CHUNGFENG TAO, and AICHUN LI,   :

                                   :

          *Defendants.*     :

                                   :
------------------------------------------------------------X

14 Civ. 8591 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Dragon State International Limited claims that Defendants Keyuan

Petrochemicals Inc., Keyuan's CEO Chungfeng Tao, and Keyuan's former CFO Aichun Li

fraudulently induced Dragon State to purchase $20 million in Keyuan stock, pursuant to a Stock

Purchase Agreement ("SPA"), by falsely representing in public filings and the SPA itself that

Keyuan had not engaged in undisclosed related party transactions.  Dragon State brings claims

for (i) violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and

SEC Rule 10b-5 against Keyuan and Tao; (ii) violation of Section 20(a) of the Exchange Act

against Tao; (iii) common law fraud against Keyuan and Tao; (iv) aiding and abetting common

law fraud against Tao and Li; and (v) breaches of representations, warrants, and contract

covenants against Keyuan.

Defendants move to dismiss on various grounds.  The Court (i) GRANTS Li's motion to

dismiss for lack of personal jurisdiction; (ii) DENIES Tao's and Keyuan's motions to dismiss

Section 10(b) claims; (iii) DENIES Tao's motion to dismiss the Section 20(a) claim; (iv)

DENIES Keyuan's and Tao's motions to dismiss common law fraud claims; (v) GRANTS Tao's

motion to dismiss the aiding and abetting fraud claim; and (vi) DENIES Keyuan's motion to

dismiss claims for breaches of representations, warrants, and covenants.

## BACKGROUND

As alleged in the First Amended Complaint ("FAC"), Keyuan is a Nevada corporation

with principal offices in the People's Republic of China that manufactures and sells

petrochemical products. FAC, Dkt. 32 ¶¶ 1, 15-16. Tao is Keyuan's CEO and the Chairman of

the Board, and also controls approximately 34 percent of Keyuan's common stock. *Id.* ¶ 17. Li,

a certified public accountant licensed to practice in North Carolina, was Keyuan's CFO from

May 2010 to October 2011. *Id.* ¶ 18.

Dragon State is a private company registered in Hong Kong and solely owned by private

equity fund Prax Capital. *Id.* ¶ 2. In April 2010, Prax and Keyuan began negotiating the

purchase of Keyuan securities through a private offering. *Id.* ¶ 20. In mid-September 2010,

Keyuan was listed on the NASDAQ stock exchange. *Id.* ¶ 23. On September 28, 2010, Keyuan

and Dragon State entered into the SPA, under which Dragon State purchased various types of

Keyuan stock for $20 million. *Id.* ¶¶ 24-26. Tao negotiated and signed the SPA on behalf of

Keyuan. *Id.* ¶ 86. The SPA contains representations and warranties that Keyuan's financial

statements are prepared in accordance with generally accepted accounting principles ("GAAP")

and that Keyuan has not engaged in undisclosed related party transactions. *Id.* ¶ 143. The SPA

also contains a forum selection clause, under which Keyuan and Dragon State agree to "submit[]

to the jurisdiction of the United States District Court sitting in the Southern District of New York

and the courts of the State of New York located in New York county" for the resolution of

disputes arising under the SPA. Dkt. 32, Ex. A at 32.

On April 1, 2011, Keyuan announced in a public filing that KPMG, Keyuan's independent auditor, had identified unexplained issues regarding certain cash transactions and recorded sales, and, consequently, Keyuan was unable to timely file its 2010 annual report. FAC ¶ 99. That same day, public trading in Keyuan's stock was halted. *Id.* ¶ 98. On May 31, 2011, KPMG resigned as Keyuan's independent auditor. *Id.* ¶ 101.

On October 20, 2011, Keyuan finally filed its 2010 annual report. *Id.* ¶ 116. The report disclosed hundreds of millions of dollars in previously undisclosed related party transactions in 2009 and 2010. *Id.* ¶¶ 116-20. The FAC alleges (citing to disclosures in the annual report) that Keyuan engaged in more than sixteen previously undisclosed transactions with entities "owned and controlled by Tao or in which his family has a financial interest." *Id.* ¶¶ 140, 142. Those transactions totaled over $21 million in 2009 and over $100 million in 2010, representing approximately 31% of Keyuan's sales in 2009 and 20% of Keyuan's sales in 2010. *Id.* ¶ 141. Keyuan also allegedly disclosed for the first time prior purchases of raw materials from Tao, representing 36% of the value of Keyuan's inventory in 2009 and 47% in 2010. *Id.*

The 2010 annual report acknowledged "possible violations of PRC laws and U.S. Securities laws" and explained that "we engaged in certain related and other parties in short term financings to overcome the restrictions regarding the use of certain bank loans or to satisfy the banks' internal requirements to demonstrate the usage of the loans." *Id.* ¶ 121. On October 20, 2011, Keyuan filed a Form 8-K in which it admitted that the failure to disclose the related party transactions was a material violation of GAAP. *Id.* ¶¶ 133-34. On November 1, 2011, Keyuan filed Form 10-Qs amending its previously filed 10-Qs for the second and third quarters of 2010 (both of which Tao and Li had signed) to include the previously undisclosed related party transactions. *Id.* ¶¶ 95, 97, 129-32.

3

On February 28, 2013, the SEC announced civil fraud actions against Keyuan and Li, in part for the nondisclosure of related party transactions in Keyuan's public filings. *Id.* ¶ 135; *see also SEC v. Keyuan Petrochemicals, Inc.*, No. 13 cv 263 (RC) (D.D.C. 2013). The FAC quotes SEC allegations that in April or May 2010 Li spoke with a manager for Keyuan's auditor, who informed her that "the company was engaged in related party transactions and that those transactions should be separately identified and disclosed as related party transactions in the company's financial statements." FAC ¶ 93. The SEC accused Li of "fail[ing] to take reasonable steps to ensure that the company was properly identifying and disclosing related party transactions." *Id.* The same day that the SEC filed its action, Keyuan agreed to pay $1 million and Li agreed to pay $25,000 to settle the charges. *Id.* ¶ 138.

## DISCUSSION

### I.   Legal Standard

To state a claim, a plaintiff must "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Thomas v. Ashcroft,* 470 F.3d 491, 495 (2d Cir. 2006). Where this determination is made prior to discovery, "the plaintiff's *prima facie*

4

showing may be established solely by allegations." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).

## II.    Personal jurisdiction over Li

Dragon State asserts that the Court has personal jurisdiction over Li based on the SPA's forum selection clause.[1]  FAC ¶ 13; *see also D.H. Blear & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements").  Li disagrees and moves to dismiss, arguing that as neither a party nor signatory to the SPA, she cannot be bound by its forum selection clause.

"A non-party to a contract may be subject to its forum selection clause if the non-party is so 'closely related' to either the parties to the contract or the contract dispute itself that enforcement of the clause against the non-party is foreseeable."[2]  *Recurrent Capital Bridge Fund I, LLC v. ISR Sys. and Sensors Corp.*, 875 F. Supp. 2d 297, 307 (S.D.N.Y. 2012).  "[T]he enforcement of the forum selection clause against the non-party must have been foreseeable prior to suit, which implies that the non-signatory must have been otherwise involved in the transaction in some manner."  *Id.* at 307-08.

Dragon State argues that the "closely related" test is met because it alleges that Li signed

---

[1] All agree that the Court would not have jurisdiction over Li (a North Carolina resident) under New York's long-arm statute, N.Y. C.P.L.R. § 302.

[2] Li suggests that the Court should not apply the "closely related" test, and instead should consider the five bases to bind a non-signatory to an arbitration agreement as articulated by the Second Circuit in *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 774 (2d Cir. 1995).  The Second Circuit has not announced the applicable test when a signatory to a forum selection clause seeks to bind a non-signatory; indeed it expressly reserved this question in a recent opinion holding that the "closely related" test applies where a non-signatory seeks to bind a signatory.  *Magi XXI, Inc. v. Stato Della Citta del Vaticano*, 714 F.3d 714, 723 n.10 (2d Cir. 2013).  In the absence of Circuit precedent, the Court follows the many other courts in this Circuit that have applied the "closely related" test in similar circumstances.  *See Leviton Mfg. Co., Inc. v. Reeve*, 942 F. Supp. 2d 244, 257-58 (E.D.N.Y. 2013) (collecting cases).

false 10-Q filings on which Dragon State relied and, "[g]iven the size, nature, and importance of the transaction for Keyuan, it would be reckless for Li, as CFO, not to have known of the Dragon State investment and its terms." Pl. Opp. Mem., Dkt. 47 at 28-30. Dragon State also attaches to its opposition filing a September 2010 email chain between Li and Michael Xu, a partner at Prax, which Dragon State contends demonstrates Li's awareness of the SPA prior to its consummation. Decl. of Michael Xu, Dkt. 46 Ex. A.

Dragon State's argument is unavailing. There are no allegations in the FAC that Li had any involvement in the negotiation of the SPA, reviewed the SPA, or was informed of its forum selection clause. This is particular telling given the many instances that the FAC stresses *Tao's* role in negotiating the SPA. FAC ¶¶ 79, 80, 86, 145, 163. Without any allegations of Li's involvement in or awareness of the transaction, the Court cannot conclude that it was foreseeable that she would be bound by the forum selection clause.[3] *Recurrent Capital*, 875 F. Supp. 2d at 307-08. Further, even if the Court could consider the attachment to Dragon State's opposition briefing (it cannot), the result would not differ. *See Leason Ellis LLP v. Patent & Trademark Agency LLC*, 13 cv 2880 (VB), 2014 WL 388 7194, at *3 (S.D.N.Y. July 2, 2014) ("Courts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss."). The attached

---

[3] Dragon State cites several distinguishable cases. For example, in *Firefly Equities, LLC v. Ultimate Combustion Co.*, 736 F. Supp. 2d 797 (S.D.N.Y. 2010), the non-party officer to be bound was a signatory to the agreement, and in *Overseas Ventures, LLC v. ROW Mgmt., Ltd., Inc.*, No. 12 cv 1033 (PAE), 2012 WL 5363782 (S.D.N.Y. Oct. 26, 2012) the non-party to be bound aided in preparing the agreement and served as a broker for one of the parties. *Nanopierce Tech., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 cv 0767 (LBS), 2003 WL 22882137 (S.D.N.Y. Dec. 4, 2003) is perhaps most on point. There the court held that a company's CFO was bound by a forum selection clause in a purchase agreement, apparently simply because she was the company's CFO. *Id.* at *5-6. To the extent that is *Nanopierce*'s holding, the Court declines to follow it. In light of the due process concerns implicated by exerting personal jurisdiction over non-parties to a contract based on a term in that contract, something more than mere status as a company executive must be alleged.

6

email chain consists of discussions regarding a press release to announce the signing of the SPA; nowhere does it suggest Li's awareness of the SPA's terms or its forum selection clause.

Dragon State has not made a prima facie showing of jurisdiction. Li's motion to dismiss for lack of personal jurisdiction is granted without prejudice.

## III.   Section 10(b) and Rule 10b-5 claims against Tao and Keyuan

Dragon State alleges that Tao and Keyuan violated Section 10(b) of the Exchange Act and SEC Rule 10b-5 by mispresenting in the SPA and Keyuan's 2010 10-Q filings that its filings complied with GAAP and that Keyuan had not engaged in related party transactions.

Section 10(b) makes it unlawful for any person to "use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b); *see* 17 C.F.R. § 240.10b-5. To state a claim, a plaintiff must allege the defendant "(1) made a material misrepresentation or a material omission as to which he had a duty to speak . . . ; (2) with scienter, (3) in connection with the purchase or sale of securities." *SEC v. Pentagon Capital Mgmt. PLC*, 725 F.3d 279, 285 (2d Cir. 2013) (internal quotation omitted).

Tao and Keyuan move to dismiss on grounds that the FAC does not adequately plead scienter. A Section 10(b) securities fraud claim must satisfy the heightened pleading standards of the Private Securities Litigation Reform Act, under which a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). "The inquiry . . . is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551

U.S. 308, 322-23 (2007). "[T]he reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Id.* at 326. Scienter may be established by alleging with particularity: "(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 586 (S.D.N.Y. 2011) (internal quotation omitted).

The FAC pleads facts that create a strong inference that Tao acted with scienter regarding the alleged misstatements in the SPA and 2010 10-Q filings. As a signatory to the SPA and Keyuan's public filings, Tao constituted a "maker" of statements contained therein and was bound to disclose all required information. *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, No. 13 cv 6057 (PAC), 2014 WL 3891351, at *3 (S.D.N.Y. Aug. 8, 2014). The SPA and Keyuan's 2010 10-Q filings contained representations that Keyuan had not engaged in undisclosed related party transactions; Keyuan later admitted that those representations were false. And, as alleged, Tao was closely tied to sizeable undisclosed related party transactions that substantially impacted Keyuan's sales: "Related party sales to Tao were over $21 million and $100 million in 2009 and 2010, respectively. These amounts represented nearly 31% and 20% of Keyuan's sales in 2009 and 2010." FAC ¶ 141. A strong inferences of scienter arises where the complaint alleges that defendant "knew facts or had access to information suggesting that their public statements were not accurate." *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000). Such facts are alleged here.

The FAC also adequately pleads scienter as to Keyuan. "When the defendant is a corporate entity . . . the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). The FAC

8

meets that burden by adequately alleging that Tao—Keyuan's CEO, Chairman, and holder of a substantial amount of Keyuan stock—acted with the requisite scienter. Keyuan contends that Tao's alleged misconduct cannot be imputed to the company since Tao was motivated by self-interest, and to Keyuan's detriment. But the FAC alleges a possible motive (quoting Keyuan's own public filings) for Tao's misconduct that *would* benefit Keyuan: the company engaged in related party transactions "to overcome the restrictions regarding the use of certain bank loans or to satisfy the banks' internal requirements to demonstrate the usage of the loans." FAC ¶ 122. As such, Tao's scienter can be imputed to Keyuan.

These holdings are consistent with those already made in litigation brought by a class of Keyuan investors, premised on the same allegations regarding Defendants' failure to disclose related party transactions in 2010 public filings. *Vanleeuwen v. Keyuan Petrochemicals Inc.*, No. 11 cv 9495 (C.D. Cal. 2011). That court denied Keyuan's and Tao's motions to dismiss, holding that the complaint "alleged facts from which the Court can infer that Tao must have known about the related party transactions and so he acted with scienter when he signed financial documents that failed to disclose those transactions." *Id.* Dkt. 46, at 12. Further, the court held that "Tao's scienter may be imputed to Keyuan." *Id.*

Tao's and Keyuan's motions to dismiss the Section 10(b) claims are denied.

## IV.   Section 20(a) claim against Tao

Dragon State alleges control person liability under Section 20(a) of the Exchange Act against Tao. "To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'n*, 493 F.3d at 108.

9

The FAC adequately pleads this claim. First, for the reasons described above, the FAC pleads a primary violation of Section 10(b) by Keyuan. Second, as Keyuan's CEO and Chairman and a signatory of Keyuan's public filings, Tao controlled Keyuan within the meaning of Section 20(a). *See In re Satyam Comput. Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 482 (S.D.N.Y. 2013) ("Generally, signing a financial statement filed by the company is enough to establish control over those who wrote the statement, as well as the content of the statement."). Third, the FAC adequately alleges that Tao was a culpable participant in the violation, since it pleads facts that create a strong inference of Tao's scienter. *See In re MF Global Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 308 (S.D.N.Y. 2013) ("In order to plead culpable participation, a plaintiff must plead with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind, *i.e.*, scienter.") (internal quotation marks omitted).

Tao's motion to dismiss the Section 20(a) claim is denied.

## V.   Common law fraud claims against Keyuan and Tao

"To state a claim for common law fraud in New York, a plaintiff must allege 1) the defendant's misrepresentation or omission of a material fact, 2) the defendant's intent to deceive plaintiff, 3) justifiable reliance upon the misrepresentation by the defrauded party, and 4) that the plaintiff's injury was caused by the defendant's misrepresentation or omission." *Harrison v. Rubenstein*, No. 02 cv 9356 (DAB), 2007 WL 582955, at *20 (S.D.N.Y. Feb. 26, 2007). "Because these elements are substantially identical to those governing § 10(b), the identical analysis applies." *Id.*

For the reasons described above, the FAC adequately pleads Section 10(b) claims against Keyuan and Tao, and so also adequately pleads claims for common law fraud. As such, the motions to dismiss the common law fraud claims are denied.

10

## VI.   Aiding and abetting common law fraud claim against Tao

Dragon State brings a claim against Tao for aiding and abetting a common law fraud. To

state such a claim under New York law and comply with the heightened pleading standards of

Fed. R. Civ. P. 9(b), a complaint must allege with particularity: "(1) the existence of a fraud; (2)

defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to

advance the fraud's commission." *Krys v. Pigott*, 749 F.3d 117, 127 (2d Cir. 2014) (internal

quotation marks and brackets omitted).

The aiding and abetting claim against Tao is duplicative and improper. "The purpose of

an aiding and abetting claim is to draw in defendants who would not be liable on the main fraud

claim, but who are alleged to have actual knowledge of the fraud and substantially assisted it."

*380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 232 (S.D.N.Y. 2008) (quoting

*Sach v. Adeli*, 2006 N.Y. Misc. LEXIS 2615, at *27 (N.Y. Sup. Ct. 2006)).  Since Tao is

sufficiently alleged to be liable as a principal, rather than an aider and abetter, the claim for

aiding and abetting must be dismissed. *Id.*

Tao's motion to dismiss the aiding and abetting fraud claim is granted.

## VII.   Breach of representations, warranties and covenants claims against Keyuan

Dragon State brings claims against Keyuan for breaches of contractual representations,

warranties, and covenants in the SPA.  In seeking dismissal of these breach of contract claims,

Keyuan cites inapposite cases dealing with circumstances in which courts consider whether fraud

claims should be dismissed because they are duplicative of uncontested contract claims. *See,*

*e.g., New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315-16 (1995) (considering the viability

of tort claims where defendants "conced[e] the viability of the [] cause of action for breach of

contract").  For the reasons described above, Dragon State has viable fraud claims against

11

Keyuan under both the Exchange Act and New York law. Such claims are premised on alleged misrepresentations in both public filings and the SPA. While the breach of contract claims are narrower in that they deal only with misrepresentations in the SPA, they are no less viable. *See First Bank of Ams. v. Motor Car Funding*, 257 A.D.2d 287, 292 (N.Y. App. Div. 1999) ("[A] fraud claim can be based on a breach of contractual warranties notwithstanding the existence of a breach of contract claim.").

Keyuan's motion to dismiss claims for breaches of representations, warranties, and covenants is denied.

## CONCLUSION

The Court holds as follows: (i) Li's motion to dismiss for lack of personal jurisdiction is GRANTED without prejudice; (ii) Tao's and Keyuan's motions to dismiss Section 10(b) claims are DENIED; (iii) Tao's motion to dismiss the Section 20(a) claim is DENIED; (iv) Keyuan's and Tao's motions to dismiss common law fraud claims are DENIED; (v) Tao's motion to dismiss the aiding and abetting fraud claim is GRANTED; and (vi) Keyuan's motion to dismiss claims for breaches of representations, warrants, and contract covenants is DENIED. The parties are directed to file a joint proposed civil case management plan by February 26, 2016. The Clerk is directed to terminate Defendant Aichun Li and the motions at Docket 35, 38, and 40.

Dated: New York, New York
February 2, 2016

SO ORDERED

PAUL A. CROTTY
United States District Judge